ST. LOUIS NATIONAL BANK et al., Appellants, v. FIELD, Admr., et al.

### Division One, February 20, 1900.

1. **Fraudulent Conveyances:** PREFERENCE: AMOUNT OF DEBT: OMITTED EVIDENCE. Where there is ample evidence to warrant the chancellor in finding that, at the time certain notes and a deed of trust to secure them were executed, the maker was indebted to the payee in excess of the amount recited in the notes, and his attaching creditors have failed to prove either fraud or mistake by which the amount of his indebtedness to the payee as expressed in the notes was swelled beyond its just proportion, and it clearly appears from the record that a written statement of an expert accountant was offered in evidence which is not set out in the abstract on appeal, it will be held that the chancellor was in a better position to determine the probative force of the evidence, and his finding, that the notes were not for a larger sum than the maker owed the payee and hence that the deed of trust securing them was not in fraud of his creditors, will be affirmed.

Appeal from Saline Circuit Court.—*Hon. Richard Field,* Judge.

AFFIRMED.

*Leslie Orear* and *Alf. F. Rector* for appellants.

(1)  The notes described in the deed of trust having been shown to be without consideration and being evidence of debts not really owing by Field to the Citizens Stock Bank at the date of the assignment to Storts, it necessarily follows as a conclusion of law that the deed of trust must be set aside.   State ex rel. v. Hope, 102 Mo. 440; Boland v. Ross, 120 Mo. 208; National Tube Works v. Machine Co., 118 Mo. 377.   (2)  The plaintiffs are entitled to have the deed of trust purged of all fictitious indebtedness and of all amounts sought to be secured by the deed of trust not justly

due and owing from Field to the Citizens Stock Bank, and the trustee could only be allowed a preference under said deed of trust for such amounts as were actually due and owing. Wait on Fraud. Convey., secs. 192, 228; Boland v. Ross, *supra*; Davenport v. Wright, 51 Pa. St. 292. (3) There was not the slightest pretext in the evidence that Field ever got one dollar of credit, or that he ever received anything from the bank in exchange for the notes. These were all attempted to be secured by the deed of trust, and although Field stated to Rich that he owed that much and more too, the fact remains that the books of the bank show affirmatively that he did not owe a single dollar represented by these notes. The explanation of his conduct is found in his determined purpose, as shown by the evidence of Storts and Garnett, and that of E. B. Field and Claude Field, that all his property was to go to the payment of depositors' claims and it made no difference whether he owed the bank or not; the evidence shows that it was a mere impulse on his part to submit his property to the payment of the depositors' claims against the bank in preference to paying his own debts. The doctrine of preferences has never been allowed to go to that extent in any court, and it would be inequitable to work such an evolution in the law to allow it in this case.

*John A. Rich* and *D. D. Duggins* for respondents.

(1) The whole question involved is one of fact; that is, whether the notes secured by the deed of trust, or any of them, are without consideration. If any one note is without consideration, then the deed of trust would not be invalidated *in toto*. The notes themselves import a consideration. R. S. 1889, sec. 2389; Montgomery Co. v. Auchley, 92 Mo. 126. (2) There is no evidence of any kind that Joseph

Field executed the deed of trust for the purpose of defrauding his creditors. The fact that the deed of trust was given to the assignee, who represented all of the creditors of the bank, plaintiffs being included, would, of itself, disprove any such fraudulent intent. (3) It is conceded by plaintiffs that the defendant Storts, as assignee, was innocent of any fraud on the part of Field in executing the deed of trust, and it is also conceded by plaintiffs that defendant Storts had no knowledge of any of the notes being fictitious, if any of them were so fictitious, and without value. (4) The plaintiffs failed in their proof. The strong preponderance of the evidence was in favor of the validity of the whole indebtedness, and the judgment dismissing the plaintiff's bill was proper. The burden of proof was on plaintiffs. Glover v. Henderson, 120 Mo. 382. (5) The assignee found the notes among the assets of the bank. Dr. Field said he owned them. It was the duty of the assignee, under his oath of office, to secure them for the benefit of all the creditors, including plaintiffs. The assignee acted promptly and took the deed of trust; and even if any one of the notes should be without consideration this would not invalidate the deed of trust *in toto* and vitiate the whole security. Union National Bank v. Mead Mercantile Co., 151 Mo. 149.

BRACE, P. J.—On the 17th of December, 1894, The Citizens Stock Bank of Slater in Saline county, an institution incorporated and doing business under the laws of this State, being insolvent, made an assignment of its property for the benefit of its creditors to the defendant Com P. Storts. On the same day, Joseph Field, late of said county, deceased, by his deed duly executed and on that day delivered to said assignee, dated December 15, 1894, in which his wife joined, conveyed to the defendant, John A. Rich, several tracts of land situate in said county containing in all about 990 acres, particularly described in the petition, in trust to

secure to the said Citizens Stock Bank "an indebtedness in the sum of $40,500, evidenced by his five promissory notes, thus described:   One dated May 3, 1894, due six months after date, for $9,500; one dated Nov. 5, 1894, due on demand, for $5,000; one dated Dec. 14, 1894, due six months after date, for $8,000; one dated Dec. 15, 1894, due six months after date, for $15,000; one dated Dec. 15, 1894, for $3,000.   All bearing interest at the rate of 8 per cent per annum, compounded annually and all signed Joseph Field." Which deed of trust was on the 18th day of December, 1894, duly acknowledged and recorded.   Afterwards on the 19th day of December, 1894, the plaintiff, the St. Louis National Bank, instituted two suits by attachment in the circuit court of said county, against the said Joseph Field, one for the sum of $10,000, and the other for the sum of $4,000, in which the writs were on the same day levied on the said real estate, and on the same day the other plaintiff, the Union National Bank of Chicago, Ills., instituted a suit by attachment in said court against said Field for the sum of $5,000, in which the writ was also the same day levied on said real estate.

Afterwards on the 10th day of January, 1895, the said Joseph Field died intestate and the defendant E. B. Field was duly appointed administrator of his estate, qualified, entered upon the disharge of his duties as such, and ever since has been the duly qualified and acting administrator thereof, was duly made a party to the suits instituted by the said plaintiffs against the said Joseph Field in his lifetime, and in due course the said plaintiffs recovered judgment therein against said estate, for the amounts claimed with interest, on the 28th day of June, 1895.   Afterwards at the October term, 1896, of the circuit court of Saline county, the plaintiffs instituted this suit against the said assignee, administrator and trustee; the substance of the charge contained in the petition, being, that the estate of the said

Joseph Field is insolvent, that said promissory notes are without consideration, and for fictitious amounts, and that they and the deed of trust were contrived and executed for the purpose of hindering, delaying and defrauding the creditors of the said Joseph Field of their just debts and demands against him, and praying for a decree declaring the deed of trust void, and for general relief. The administrator by his answer joined in this prayer. The answer of the assignee was a general denial, and of the trustee, of all knowledge or information sufficient to form a belief as to the truth of the allegations of the petition. In due course the case came on for trial on the issues, the evidence and argument of counsel heard, and the case taken under advisement until the 17th of June, 1897, when judgment was rendered dismissing plaintiffs' bill and against them for costs. From which in due time they perfected their appeal to this court.

(1) The contention here is that on the evidence the court committed error in dismissing the plaintiffs' bill, for which error its judgment should be reversed and a decree entered here for plaintiffs, making their judgments a special lien upon the real estate described in the petition, free from the cloud created by the deed of trust, except that part actually represented by said note for $8,000, diminished by two items, one of $6,300 and one of $617.49. In other words, that the trial court, on the evidence under the pleadings, could and ought to have held that the deed of trust was void as to the plantiffs except as to the insignificant sum of $1,182.51, represented by that balance.

From the evidence upon which this contention is based, it clearly appeared that at the time the notes and deed of trust were executed and delivered, the said Joseph Field was largely indebted to the bank, of which he had been the cashier and executive officer for many years. That he was the only person who really knew the amount of his indebtedness to the bank, and perhaps even he did not know the exact

amount of such indebtedness. That the notes were executed and delivered by him to the bank, in good faith, in liquidation of that indebtedness, and that the deed of trust was thereafter executed and delivered by him, and accepted by the assignee in good faith to secure the payment of such indebtedness. The good faith of the parties to the transaction is beyond question. There was no fraudulent purpose in it. The purpose was to secure the payment of an honest debt, and nothing more. The evidence offered by the plaintiffs to impeach the transaction wholly failed to support the allegations of fraud contained in the petition, and at best only tended to prove that Joseph Field in liquidating his debt to the bank by these notes may have been mistaken in the amount of such indebtedness, and the note executed may have been in excess thereof. Within less than a month after the transaction was consummated, Joseph Field died, and the only information we have directly from him on the subject in the evidence before us, apart from the transaction itself, are his declarations made to the trustee in the presence of the assignee, vice-president and some of the directors of the bank on the day of the assignment (when he was being cautioned not to make the deed of trust unless he owed the debts evidenced by these notes) ; the substance of which as testified to by these witnesses being that he owed the bank that amount, and more too; that he really owed the bank between fifty and sixty thousand dollars.

For further evidence on this subject recourse was had to the books of the bank, which were examined by two experts, both of whom testified on the trial. One of these, George Peak, of Kansas City, who was employed by the administrator for that purpose, testified in behalf of plaintiffs that he was an accountant of thirty years' experience and examined the books with reference to the account of Joseph Field, and the notes described in the deed of trust; that he was engaged about a month in making the examination, and states as the

result of his examination that on the 15th day of December, 1894, Joseph Field was indebted to the bank in about the sum of $21,000.    The other, J. Percival Smith, of St. Louis, an accountant of thirty-five or forty years' experience, appointed by the circuit court of Saline county to examine the books of the bank, testified that he was engaged in the work for about five months, and as the result of his examination, that Joseph Field was at the date last aforesaid indebted to the bank in the sum of $53,193.11.    Both of these witnesses seem to have prepared statements of the account, on which they were examined at great length on the trial.    At the close of appellant's abstract it is stated "Exhibits Y and Z are here read in evidence," and then follows one statement only, showing a balance due the bank of $21,239.22.    Presumably this is the statement of Mr. Peak, and on which his oral evidence was based.    The statement of Mr. Smith, if given in evidence, does not appear in the abstract.    It does appear, however, that the books of the bank, the reports and statements of these experts, their oral evidence in connection therewith, and rendered more intelligent thereby, and that of the officers of the bank, and of such other witnesses as could throw any light on the transactions between Joseph Field and the bank, and the state of his account, similarly illuminated, were all before the trial court, and that the chancellor there was in a far better position to determine the value and probative force of the evidence than we are.

It would serve no good purpose to attempt an analysis of the evidence as it appears on this record, or to go into a history of the peculiar manner in which the business of this bank was conducted and its books kept by Joseph Field, and his subordinates for some years before the failure, whereby his own funds, debts and credits, became so mingled with those of the bank, as to render it very difficult, if not impossible to state accurately the account between them.    While

the evidence in this record may not be sufficient for that purpose, it was amply sufficient to warrant the chancellor in finding that, at the time these notes were executed, Joseph Field was indebted to the bank not only in the amount evidenced by the notes, but in a much larger amount, and the plaintiffs having failed to prove either fraud or mistake by which the amount of his indebtedness to the bank was swelled in the security beyond its just proportions, failed to make out a case for the relief sought, on any view of the issues made by the pleadings. The court therefore committed no error in dismissing the bill, and its judgment is affirmed. All concur.